

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-18-00251-CV

**CHW-LATTAS CREEK, L.P.** by GP Alice Lattas Creek, L.L.C.,
Appellant

v.

**CITY OF ALICE**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 17-01-56785-CV
Honorable Richard C. Terrell, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed:  October 31, 2018

AFFIRMED

CHW-Lattas Creek, L.P. appeals the trial court's order granting a plea to the jurisdiction filed by the City of Alice asserting the trial court erred in granting the City's plea because: (1) the City was engaged in a proprietary function for which the City's immunity was waived; (2) the Development Agreement between CHW and the City waived the City's immunity under section 271.152 of the Texas Local Government Code; (3) courts cannot interfere with the exercise of municipal legislative discretion; and (4) the City is estopped from claiming immunity.  CHW also

contends the trial court erred in granting the City's objections to the affidavit of William W. Ochse, the manager of CHW's general partner. We affirm the trial court's order.

## BACKGROUND

Effective January 8, 2013, CHW and the City entered into a Development Agreement. The Development Agreement recites CHW owns 352.753 acres of land in Jim Wells County, Texas (the "Developer Property"), and the purpose of the agreement is "to promote economic development as contemplated by Chapter 380 of the Texas Local Government Code whereby [CHW] will sell 22 acres of land and dedicate 18 acres of land to the City and the City will, in turn, construct a multi-use complex, including but not limited to an outdoor amphitheater, an Aquatic Center [as defined in the agreement] and a conference center, and will facilitate the construction of a hotel within said 40 acres." The Development Agreement further recites the parties "have in the manner provided by Tex. Loc. Gov't Code 271.151 et seq. entered into a written contract for providing goods and services to the local governmental entity."

Under the terms of the Development Agreement, CHW agreed to sell the surface estate of 22 acres of the Developer Property to the City for a purchase price of $7,000 per acre (the "Purchased Property"). CHW also agreed to dedicate the surface estate of 18 acres of the Developer Property to the City (the "Dedicated Property"). Finally, CHW agreed to dedicate the surface estate of 30.38 acres of the Developer Property to the City (the "Park Land Property"). The Purchased Property, Dedicated Property, and Park Land Property are collectively defined as the Conveyed Property.

With regard to the Purchased Property, the agreement provided the conveyance was contingent upon: (1) the City completing construction of the Aquatic Center (as defined in the agreement) within thirty-six months; and (2) substantially completing an amphitheater as described in a master plan on file with the City's secretary. Absent substantial completion of those structures,

all or a portion of the Purchased Property was subject to being re-conveyed to CHW at the same per acre price paid by the City. Similarly, although the City was only required to facilitate the construction of a hotel by a third party, if the hotel was not constructed, CHW was granted a right of first refusal to purchase the lot or lots on which the hotel was to be constructed in the event the City sought to sell the lot or lots. The Park Land Property was limited to use as a city park but was not subject to re-conveyance.

In the Development Agreement, CHW and the City agreed the Conveyed Property would be developed in phases "commencing with the construction of the City Utility Improvements, City Road Improvements, and the Aquatic Center." With respect to the City Utility Improvements, the City agreed to extend water lines and sanitary sewer mains from their existing termination points to other points that would facilitate the development of the Developer Property. With respect to the City Road Improvements, the City agreed to construct two roads to facilitate the development. CHW and the City agreed to work together to develop a schedule for each phase of the construction, and the City agreed to commence construction of the Aquatic Center, City Utility Improvements, and City Road Improvements within 120 days after the closing on the Purchased Property.

Also in the Development Agreement, CHW agreed to submit a petition for the voluntary annexation of the Developer Property within 120 days from the effective date of the Development Agreement. CHW and the City agreed to the regulations and zoning that would govern the development of the Developer Property which the agreement contemplated could involve multiple subdivisions. CHW and the City acknowledged their desire and intent "to provide for the planning, development and construction of a first of its kind Master Planned Community providing for a mix of uses and designs" and that CHW and the City would "work together to prepare a mutually

acceptable Planned Unit Development plan for the Property to permit a mix of compatible land uses." Finally, the agreement contained the following provision entitled "Waiver of Immunity":

> The parties expressly agree that this Agreement is made and is subject to the requirements of Tex. Loc. Gov't Code Ann. Chapter 271, Subchapter 1 and that the City is authorized to enter into this Agreement and expressly waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract.

On January 6, 2017, approximately four years after the effective date of the Development Agreement, CHW sued the City alleging the City "failed to construct roads of such specifications so as to adequately take care of Plaintiff's subdivision and has failed to increase the much needed water pressure to serve Plaintiff's development lots and subdivision, and has failed to construct the amphitheater required by the Agreements." CHW alleged claims for breach of contract, declaratory relief and fraud.

The City filed a plea and amended plea to the jurisdiction asserting immunity from suit. First, the City asserted the Development Agreement was not a contract for providing goods and services to the City as required for immunity to be waived under section 271.152 for a breach of contract claim. Second, the City asserted section 271.152 does not waive immunity for a claim for declaratory relief. Finally, the City asserted the fraud claim is an intentional tort for which immunity is not waived. In support of its plea, the City attached excerpts from the deposition of William W. Ochse, the manager of CHW's general partner.

CHW filed a response to the City's amended plea asserting immunity was waived for its breach of contract claim under section 271.152 because the Development Agreement was a contract for services. CHW further responded immunity was waived because the City was engaged in proprietary functions in executing the Development Agreement. Finally, CHW responded the City was estopped from claiming its immunity was waived. In support of its response, CHW produced an affidavit signed by Ochse and the complete transcript of Ochse's deposition.

The City filed a reply to CHW's response asserting it was not estopped from claiming immunity from suit and objecting to Ochse's affidavit. After CHW filed a sur-response, the trial court held a hearing on the City's amended plea and took the matter under advisement. The trial court subsequently entered orders granting the City's objections to Ochse's affidavit and deposition, granting the City's amended plea, and dismissing the underlying cause for lack of subject matter jurisdiction. CHW appeals; however, CHW only challenges the trial court's order with regard to its breach of contract and declaratory relief claims.

## STANDARD OF REVIEW

We review a trial court's ruling on a plea to the jurisdiction de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). If the plea to the jurisdiction challenges the pleadings, we liberally construe the pleadings to determine if the plaintiff "has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If the plea to the jurisdiction challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632-33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id*. at 633. "If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder." *Id*. "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Id*.

## GOVERNMENTAL V. PROPRIETARY FUNCTION

In its brief, CHW first contends the trial court erred in granting the City's plea because the City was engaged in a proprietary function when it entered into the Development Agreement for

which its immunity from suit was waived. The City responds that it was engaged in governmental functions and thereby retained its immunity.

In regard to governmental immunity, the Texas Supreme Court "has distinguished between those acts performed as a branch of the state and those acts performed in a proprietary, nongovernmental capacity." *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016). A municipality is immune for acts done as a branch of the state referred to as governmental functions. *Id*. at 433. Governmental functions are "functions that are enjoined on a municipality by law ... to be exercised by the municipality in the interest of the general public." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (West Supp. 2017).

"[S]overeign immunity does not[, however,] imbue a city with derivative immunity when it performs proprietary functions." *Wasson Interests, Ltd.*, 489 S.W.3d at 439. Proprietary functions are "functions that a municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b).

A city is not immune in performing a proprietary function regardless of "whether a city commits a tort or breaches a contract, so long as in each situation the city acts of its own volition for its own benefit and not as a branch of the state." *Wasson Interests, Ltd.*, 489 S.W.3d at 439. Therefore, "the common-law distinction between governmental and proprietary acts—known as the proprietary-governmental dichotomy—applies in the contract-claims context just as it does in the tort-claims context." *Id*.; *see also Jamro Ltd. v. City of San Antonio*, No. 04-16-00307-CV, 2017 WL 993473, at *3 (Tex. App.—San Antonio Mar. 15, 2017, no pet.) (mem. op.) (recognizing the holding in *Wasson Interests, Ltd.* as extending the proprietary-governmental dichotomy to contract claims).

"[T]o determine whether governmental immunity applies to a breach-of-contract claim against a municipality, the proper inquiry is whether the municipality was engaged in a

governmental or proprietary function when it entered the contract, not when it allegedly breached that contract." *Wasson Interests, Ltd. v. City of Jacksonville*, No. 17-0198, 2018 WL 2449184, at *5 (Tex. June 1, 2018). "Stated differently, the focus belongs on the nature of the contract, not the nature of the breach." *Id*. "If a municipality contracts in its proprietary capacity but later breaches that contract for governmental reasons, immunity does not apply." *Id*. "Conversely, if a municipality contracts in its governmental capacity but breaches that contract for proprietary reasons, immunity does apply." *Id*.

"The distinction between a municipality's governmental and proprietary functions seems plain enough, but the rub comes when it is sought to apply the test to a given state of facts." *Id*. at *2 (internal quotation omitted). "[D]etermining which functions are proprietary and which are governmental is not always a cut-and-dried task." *Id*. (internal quotation omitted).

"[T]he Texas Constitution authorizes the Legislature to 'define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law.'" *Id*. at *3 (quoting TEX. CONST. art. XI, § 13). "Exercising that authority, the Legislature has defined and enumerated governmental and proprietary functions for the purposes of determining whether immunity applies to tort claims against a municipality." *Id*. Specifically, the Texas Torts Claims Act "enumerates thirty-six governmental functions." *Id*.

One of the governmental functions enumerated by the Legislature in the Act is "community development or urban renewal activities undertaken by municipalities and authorized under Chapters 373 and 374, Local Government Code." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(34). It cannot be disputed that the nature of the Development Agreement is a contract for community development. However, CHW contends the Legislature limited the type of community development that constitutes a governmental function to community development

under Chapters 373 and 374. Because the Development Agreement recites its purpose is to promote community development under Chapter 380, CHW argues section 101.0215(34) does not apply. We disagree.

In its analysis of the 1997 enabling legislation that amended section 101.0215 to add subsection 34, the House Committee on Civil Practice stated:

> Community development activities, even though inherently governmental, are not categorized in the [Texas Torts Claims Act] as either governmental or proprietary. However, courts have found them to be proprietary (i.e., discretionary), resulting in unlimited liability for the municipality. Consequently, lawsuits against municipalities relating to community development activities diminish the funds available for projects within the municipality. The designation of community development activities as a governmental function should provide reasonable limits on recoveries in this arena and avoid the potential of major losses which would reduce funding of community development projects.

*E. Hous. Estate Apartments, L.L.C. v. City of Hous.*, 294 S.W.3d 723, 732-33 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 2766, 75th Leg., R.S. 1997). It appears the language in the bill adding subsection 34 focused on Chapters 373 and 374 of the Local Government Code because the two cases in which courts had found community development activities to be proprietary involved community development activities undertaken under those two chapters. *See id*. at 732 (noting amendment followed decisions in *City of Hous. v. Sw. Concrete Constr., Inc.*, 835 S.W.2d 728 (Tex. App.—Houston [14th Dist.] 1992, writ denied) and *Josephine E. Abercrombie Interests, Inc. v. City of Hous.*, 830 S.W.2d 305 (Tex. App.—Corpus Christi 1992, writ denied)). The logic for the amendment, however, extends to all community development activities regardless of which chapter of the Local Government Code applies. Because the list of governmental functions is nonexhaustive but instructive, *see Wasson Interests, Ltd.*, 2018 WL 2449184, at *3, we conclude community development undertaken under Chapter 380 is a governmental function. *See City of Lancaster v. White Rock Commercial, LLC*, No. 05-17-00583-CV, 2018 WL 3968484, at *1 (Tex. App.—

Dallas Aug. 20, 2018, no pet. h.) (mem. op.) (holding city's actions in entering into agreement pursuant to section 380.001 were governmental because functions covered by agreement were defined as governmental functions in section 101.0215); TEX. LOC. GOV'T CODE ANN. § 380.001 (West 2005) (authorizing programs "to promote state or local economic development"); *see also* Op. Tex. Att'y Gen. No. DM-185 (1992) (concluding section 380.001 of the Local Government Code was enacted by the Legislature pursuant to article III, section 52–a of the Texas Constitution which authorizes the legislature to provide for the creation of programs "for the public purposes of development and diversification of the economy of the state"); *cf. Jamro Ltd.*, 2017 WL 993473, at \*3-4 (holding creation of reinvestment zone to promote development of an area that would not occur through private investment was a governmental function); *but see City of Westworth Vill. v. City of White Settlement*, No. 02-17-00211-CV, 2018 WL 3763908, at \*13 (Tex. App.—Fort Worth Aug. 9, 2018, no pet. h.) (holding development agreement entered into pursuant to chapter 380 was not "undertaken in a governmental capacity"). Because the purpose of the Development Agreement was to promote economic development under Chapter 380, we hold the City was engaged in a governmental function when it entered into the Development Agreement.[1]

## CHAPTER 271

CHW next argues that if this court determines the City was engaged in a governmental function, the City's immunity is waived under section 271.152 of the Local Government Code because the Development Agreement is a contract for the provision of services to the City. The

---

[1] We also note the specific activities the City agreed to undertake pursuant to the Development Agreement are governmental functions. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.0215(3), (13), (16), (23), (29), (32) (listing street construction and design, parks, civic and convention centers, recreational facilities including swimming pools, zoning, planning, and plat approval, and water and sewer service as governmental functions); *see also Jamro Ltd.*, 2017 WL 993473, at \*4 (holding city engaged in governmental function in approving tax increment financing used for improvements which were defined by section 101.0215 to be governmental functions).

City responds CHW does not provide services to the City under the Development Agreement. We agree with the City.

Section 271.152 of the Local Government Code provides that a local governmental entity "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach" of a "contract subject to this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2016). In pertinent part, section 271.151(2) defines a "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." Immunity is only waived under section 271.152, however, for damages recoverable under section 271.153. *Zachry Constr. Corp. v. Port of Houston Auth. of Harris Cty.*, 449 S.W.3d 98, 110 (Tex. 2014). Under section 271.153, a successful claimant's recovery is limited to "'the balance due and owed by the local governmental entity under the contract,' plus attorney's fees and interest." *Lubbock Cty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 304 (Tex. 2014) (quoting TEX. LOC. GOV'T CODE ANN. § 271.153(a)(1)(3)). Section 271.153(b) expressly excludes the recovery of exemplary damages and most consequential damages. TEX. LOC. GOV'T CODE ANN. § 271.153(b).

"[T]he term 'services' [as used in section 271.151] is broad and encompasses a wide array of activities." *Lubbock Cty. Water Control & Imp. Dist.*, 442 S.W.3d at 305. However, "[c]onstruing section 271.152's waiver of immunity with section 271.153(a)'s limitation on damages to which the waiver applies, the waiver will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide to the governmental entity." *Id*. at 304. "While a party may agree to provide goods or services in exchange for something other than payment, the absence of any agreement by the governmental entity to pay for goods or services may indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." *Id*. at 305.

In *East Hous. Estate Apartments, L.L.C.*, East Houston Estate Apartments, L.L.C. entered into a loan agreement with the City of Houston with the proceeds being used to assist in rehabilitating a 130 unit apartment complex. 294 S.W.3d at 726. Funding for the loan was provided by the city through a federal program, and the community development activity was authorized under Chapter 373 and/or 374 of the Texas Local Government Code. *Id*. East Houston eventually sued the city for breach of contract, and the trial court granted the city's plea to the jurisdiction. *Id*. at 728-29. After holding the city was engaged in a governmental function, *id*. at 733-34, the Houston court next addressed East Houston's argument that the city's immunity was waived under section 271.152. East Houston argued it was to provide the service of rehabilitating the apartment complex to provide low-income housing for the city's residents in exchange for the funds allocated by the loan agreement. *Id*. at 734. The City argued the loan agreement did not require East Houston to provide "anything that could be construed as a service to the City." *Id*. The Houston court agreed with the city, reasoning: "while the City would benefit in a general way from having East Houston's apartment units refurbished and from the availability of more housing for low-income families, nothing in the contract obligated East Houston to provide any municipal services directly to the City." *Id*. at 736. The court asserted, "The City was thus a conduit of federal funds and a facilitator of the project, but no services were provided directly to the City." *Id*.

Similarly, in this case, CHW and the City agreed to undertake various activities to develop the Developer Property and to cooperate with each other in doing so. Just like the City of Houston, the City in this case was a "facilitator of the project," but the Development Agreement did not obligate or require CHW to provide any services to the City, and the City did not agree to pay CHW for any services. *Lubbock Cty. Water Control & Imp. Dist.*, 442 S.W.3d at 303 ("When a party has no right under a contract to receive services, the mere fact that it may receive services as

a result of the contract is insufficient to invoke chapter 271's waiver of immunity. At best, such services are only an 'indirect' and 'attenuated' benefit under the contract."); *W. Travis Cty. Pub. Util. Agency v. Travis Cty. Mun. Util. Dist. No. 12*, 537 S.W.3d 549, 555 (Tex. App.—Austin 2017, pet. denied) (noting " the governmental entity must in the first instance have a *right* under the contract to receive services" for immunity to be waived) (emphasis in original); *City of Paris v. Abbott*, 360 S.W.3d 567, 576 (Tex. App.—Texarkana 2011, pet. denied) (noting for contract to be one for services under section 271.152 "there must be some obligation to perform" services for the city). Although CHW points to the actions it took in furtherance of the development, these actions were in furtherance of CHW's desire to develop its land and were not services provided to the City under the essential terms of the Development Agreement. Additionally, although the Development Agreement recites that it is a written contract for providing goods and services to the City, recitals cannot be used to contradict the operative terms of a contract. *Griffith Techs., Inc. v. Packers Plus Energy Servs. (USA), Inc.*, No. 01-17-00097-CV, 2017 WL 6759200, at *4 (Tex. App.—Houston [1st Dist.] Dec. 28, 2017, no pet.) (mem. op.) (noting recitals "cannot be used to contradict the operative terms of a contract"); *All Metals Fabricating, Inc. v. Ramer Concrete, Inc.*, 338 S.W.3d 557, 561 (Tex. App.—El Paso 2009, no pet.) (noting recitals "will not control a contract's operatives [sic] clauses unless those clauses are ambiguous."). Therefore, because the Development Agreement was not an agreement for providing services to the City, the City's immunity was not waived under the Development Agreement.

**MUNICIPAL LEGISLATIVE DISCRETION**

CHW next argues the Development Agreement involves municipal legislative discretion and courts have no authority to interfere with a municipality's exercise of its legislative discretion. Quoting *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982), CHW asserts "'courts have no authority to interfere unless [the municipal legislative act] is unreasonable and

arbitrary—a clear abuse of municipal discretion.'" Quoting *Patterson v. City of Bellmead*, No. 10-12-00357-CV, 2013 WL 1188929, at * 7 n.6 (Tex. App.—Waco Mar. 21, 2013, pet. denied) (mem. op.), CHW asserts, "'[A] court will not substitute its judgment for legislative discretion absent a clear and palpable abuse of power.'"

The cases cited by CHW, however, involve ordinances or zoning regulations adopted by a municipality. *See City of Brookside Vill.*, 633 S.W.2d at 792 (addressing challenge to two municipal ordinances); *Patterson*, 2013 WL 1188929, at *1 (addressing challenge to constitutionality of city ordinance). "The enactment by a municipal corporation of an ordinance is a legislative function, an expression of the will of the Legislature through the instrumentality of the city council, upon which the Legislature has been fit to confer a part of the governmental power reposed in it." *City of Grand Prairie v. Turner*, 515 S.W.2d 19, 25 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.) (internal quotation omitted); *see also Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 904 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (noting municipal ordinances are interpreted by the same rules of construction applicable to statutes and a court's primary duty is to carry out the intentions of the municipal legislative body). CHW does not cite any cases holding a city's execution of a development agreement is a legislative function or how such an agreement is an enactment of a municipal legislative body. Because the City's execution of the Development Agreement did not involve the actions of the City as a municipal legislative body, the law relating to the exercise of municipal legislative discretion does not apply to the facts of this case.

**ESTOPPEL**

CHW next argues the City should be estoped from asserting immunity or denying its waiver.[2] As previously noted, the Development Agreement contains the following provision entitled "Waiver of Immunity":

> The parties expressly agree that this Agreement is made and is subject to the requirements of Tex. Loc. Gov't Code Ann. Chapter 271, Subchapter 1 and that the City is authorized to enter into this Agreement and expressly waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract.

The City responds that only the Legislature can waive immunity, and jurisdiction cannot be conferred by agreement.

"The general rule has been in this state that when a unit of government is exercising its governmental powers, it is not subject to estoppel." *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). The general rule "derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents." *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006). Stated differently, "barring estoppel helps preserve separation of powers; legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation." *Id*. As a result, "the interests of an individual seeking to estop a governmental entity must at times yield to the general public's interest in a

---

[2] CHW does not argue the parties conferred jurisdiction on the trial court by their agreement, only that the City should be estoped from claiming its immunity is not waived. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) (noting jurisdiction cannot be conferred by agreement); *In re Liberty Mut. Fire Ins. Co.*, No. 04-14-00254-CV, 2014 WL 3747332, at *4 (Tex. App.—San Antonio July 30, 2014, orig. proceeding [mand. denied]) (recognizing same).

government that is not encumbered by the threat of unlimited liability" because barring estoppel "protects the public fisc." *Id.* at 774.

However, "[t]here is authority for the proposition that a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Prasifka*, 450 S.W.2d at 836. This exception, however, "is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.*

In *Meuth v. City of Seguin*, No. 04-16-00183-CV, 2017 WL 603646, at *7 (Tex. App.—San Antonio Feb. 15, 2017, pet. denied) (mem. op.), this court noted the Texas Supreme Court clarified the exception to the general rule in *Super Wash, Inc.* and reiterated its limited applicability, asserting:

> In clarifying the exception, the court first noted it had only applied the exception in two cases in which it held a city was estopped from enforcing a notice of claim provision.[3] The court asserted those decisions "illustrate the types of cases that may fall under the 'justice requires' exception" because evidence was presented "that city officials may have affirmatively misled the parties seeking to estop the city and that the misleading statements resulted in the permanent loss of their claims against the cities." "Evidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception articulated in *Prasifka*." With regard to its application of estoppel in the two decisions, the court noted the complaining parties in those cases "would have been completely denied relief had the cities not been

---

[3] In *Roberts v. Haltom City*, Roberts sued the city for injuries she sustained as a result of a fall on a street maintained by the city. 543 S.W.2d 75, 76 (Tex. 1976). The city asserted Roberts's claim was barred because she failed to give city officials written notice of her claim within thirty days of the occurrence as required by the city charter. *Id.* The Texas Supreme Court held a fact issue was raised regarding whether city officials led Roberts to believe the notice of claim requirement was waived which would estop the city from asserting the notice requirement as a bar to her suit. *Id.* at 78. As a result, summary judgment was improperly granted in favor of the city.

Similarly, in *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986), the Schautteets sued the city alleging the city negligently destroyed their house by fire. The insurance company paid the policy limit for the loss, signed a subrogation agreement with the Schautteets, and intervened in the lawsuit. *Id.* The insurance company's attorney met with the city attorney who informed him the city would investigate the incident. *Id.* The city's charter contained a ninety-day notice of claim provision. *Id.* More than ninety days after the fire, a city representative called the insurance company's attorney and denied any liability. *Id.* The Texas Supreme Court held a fact issue was raised regarding whether the city led the claimant to believe no further steps needed to be taken until the city completed its investigation; therefore, summary judgment was improper because the city might be estopped from relying on the notice of claim provision. *Id.* at 105.

estopped, because only an equitable remedy could revive their otherwise extinguished claims."

*Id*. (internal citations omitted).

In each of the cases in which the Texas Supreme Court held the exception applied, the plaintiff had a viable claim for which immunity was waived but would have been prevented from asserting that claim because the plaintiff failed to timely provide formal notice of the claim based on misleading statements made by city officials. Those cases are readily distinguishable from the instant case. In this case, CHW did not have a viable claim for which immunity was waived because the Development Agreement did not require CHW to perform any services for the City.

The ultimate question presented in this case is whether city officials should be permitted to seemingly mislead a developer by contractually agreeing to waive the City's immunity. We do not believe a City should be estopped from asserting its immunity based on the "mistake, neglect, or intentional act" of city officials. *Super Wash, Inc.*, 198 S.W.3d at 733. Instead, parties who enter into an agreement with a local governmental entity should be charged with the law regarding the entity's immunity and enter into the agreement at the parties' own peril. As the Texas Supreme Court has explained:

> This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns. In a world with increasingly complex webs of government units, the Legislature is better suited to make the distinctions, exceptions, and limitations that different situations require. The extent to which any particular city, county, port, municipal utility district, school district, or university should pay damages involves policy issues the Legislature is better able to balance.

*City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). This balance is apparent in the Legislature's decision to enact section 271.152 to waive immunity for suits based on written contracts. In enacting section 271.152, the Legislature chose not to enact a "blanket waiver" but to limit the waiver to a specific type of contract and to "impose limits on damages." *Id*. at 470.

Ultimately, "'[t]he decision as to who should bear responsibility for governmental employees' misconduct should be made by the peoples' representatives,'" not by the governmental employees engaged in the misconduct. *Id*. at 471 (quoting *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)).

Based on the foregoing, although we do not condone the actions by the city officials in agreeing to the inclusion of the immunity waiver in the Development Agreement, we hold the facts in this case do not present an exceptional case for estopping the City. Both CHW and the city officials engaged in negotiating the Development Agreement were clearly aware of the applicable law. CHW knew the City's immunity would only be waived if the agreement required CHW to provide services to the City. CHW, however, did not negotiate an agreement in which they were required to provide any such services. *Cf. Nat'l Pub. Fin. Guarantee Corp. v. Harris Cty.-Hous. Sports Auth.*, 448 S.W.3d 472, 484 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding governmental entity does not breach an agreement in which it agrees to waive immunity by asserting immunity in a subsequent lawsuit because "only the Legislature can waive immunity").

## EVIDENTIARY RULINGS

As evidentiary support for its response to the City's plea, CHW produced the affidavit of William W. Ochse, the manager of CHW's general partner. In the nine-page affidavit, Ochse makes statements regarding his understanding of the Development Agreement and his opinion regarding the services CHW provided to the City. The City filed objections to virtually every statement contained in the affidavit. Among the City's objections were objections that the statements in the affidavit were conclusory, violated the best evidence and parol evidence rules, were not within Ochse's personal knowledge, and provided opinions on the legal effect of the agreement which is a question of law. The trial court sustained all of the City's objections.

In its brief, CHW generally challenges the trial court's ruling on the City's objections without relating the objections to the specific statements made in the affidavit. These general challenges are not sufficient to preserve CHW's complaints regarding the evidentiary rulings for our review. *See Ruffin v. Sanchez*, No. 04-16-00759-CV, 2017 WL 4014651, at *1 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.) (noting brief must address specific objections); TEX. R. APP. P. 38.1(i) ("The [appellant's] brief must contain a clear and concise argument for contentions made, with appropriate citations to authorities and to the record.").

Furthermore, Ochse's affidavit primarily attempts to explain his understanding of the Development Agreement and the services CHW provided to the City in an effort to establish the agreement waived the City's immunity under section 271.152. The interpretation of an unambiguous contract, however, is a question of law. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). In construing a contract, we consider the intent of the parties as expressed in the written agreement. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation, and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (1995) (internal citation omitted). Because the Development Agreement is unambiguous, the trial court properly sustained the objections to the portions of the affidavit providing Ochse's interpretation. And, because the only issue to which Ochse's affidavit was relevant was whether CHW was obligated to provide services to the City which presents a question of law for this court's consideration, CHW does not explain how the exclusion of the affidavit harmed it.

CHW also contends the trial court abused its discretion in sustaining the City's objection to Ochse's deposition transcript, asserting the City objected on the grounds that offering the entire deposition transcript was unfair. The City's objection, however, was that CHW attached the entire

deposition transcript without referring to any particular page or portion of the testimony. The City asserted, "It is not feasible or fair to require the Court to comb through the entire deposition transcript to look for some testimony that might be relevant to the issues raised by the Amended Plea to the Jurisdiction." Neither the trial court nor this court is required to wade through an entire deposition transcript; instead, a party must specifically identify the supporting proof the party seeks to have the trial court consider. *See Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex. App.—San Antonio 2005, no pet.); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.).

## CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice