

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| COUNTY OF EL PASO, TEXAS, | § | |
| | | No. 08-19-00082-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 327th District Court |
| MONIQUE AGUILAR, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 2016-DCV-2806) |

## **O P I N I O N**

Appellant County of El Paso appeals from an order denying its plea to the jurisdiction in an employment discrimination lawsuit brought against it by Appellee Monique Aguilar. Aguilar alleges she suffered discrimination based on her sex—to include disparate treatment and hostile work environment—and retaliation for engaging in protected activity. The County asserts that Aguilar failed to make out neither a *prima facie* case of discrimination nor retaliation. We affirm in part and reverse in part.

## I. BACKGROUND

We set out below the general facts underlying Aguilar's two distinct claims viewing all evidence as required by the applicable standard of review. Additional details are included when pertinent to the analysis that follows.

Aguilar worked for the County in various positions for nearly twenty-four years from 1991 through 2015. She last worked as the Facilities Manager overseeing the administration of the Facilities Management Division of the Public Works Department. This position entailed the direct supervision of division managers who were responsible for up to 48 employees performing trade-licensed work to include electrical, plumbing, and heating and cooling, and projects including installations, repairs, or maintenance, for any one of the County's 58 properties. Aguilar held the facilities management position from October 2011 to April 2015.

In 2010, the male employee holding the position then known as the Facilities Director resigned and the position remained vacant for a period. Although Aguilar performed duties of the position for an interim period, she declined use of the specific job title. Later, the County restructured the position and retitled it as Facilities Manager. Aguilar assumed that position in 2011.

Aguilar complained to her supervisors and to human resources personnel that she was paid substantially less than not only the male who previously held the position of Facilities Director but also less than other similarly situated male coworkers. She suspended her complaints when she was warned by her supervisor, apparently at the direction of human resources, to "[b]e careful with complaints." Aguilar did, however, raise the subject of pay disparity again during a Commissioner's Court meeting in September 2014. She was later reprimanded for voicing a discrimination complaint in public.

In addition to disparate treatment, Aguilar also made complaints to the County about sex-based harassment resulting in a hostile work environment. Beginning in 2000 or 2001, Aguilar repeatedly told her supervisors and human resources personnel that she was being harassed by a

2

coworker, Manny Lucero, and the reason for the harassment was that she was a woman. In 2014, director of public works Ernesto Carrizal imposed restrictions on Lucero's contact with Aguilar and her staff. Carrizal retired in December 2014, at which time Pat Adauto assumed the position of director of public works.

In April 2015, Adauto lifted the restrictions on Lucero and told Aguilar to "forget the past," "make amends with [Lucero]," and treat the matter as "water under the bridge." Aguilar agreed, provided that Lucero did not resume his harassing behavior. Lucero did, however, resume that behavior immediately upon Adauto's lifting of the restrictions. Aguilar complained again to Adauto and to Betsy Keller, director of human resources, about Lucero's harassment, and again told them that the basis for the harassment was that she was a woman. She supported that assertion by relaying that Lucero himself had told Aguilar that a woman could not do the job of Facilities Manager. Aguilar felt that Adauto and Keller did not give credence to her complaints as no restrictions were imposed on Lucero.

On April 16, 2015, three days after Aguilar met with Adauto and Keller about Lucero's conduct, she received an email from Adauto which included an assertion that Aguilar had engaged in inappropriate behavior during a meeting at which Lucero was present and informing her that Adauto wanted to meet to discuss "next step action." Aguilar construed this request to mean that Adauto, who had thus far refused to take disciplinary action against Lucero, would impose disciplinary action on her instead. No longer able to cope with her work environment, Aguilar experienced an anxiety attack that caused her to shake, cry, and hyperventilate. Her husband came to get her from work. That evening she resigned her position.

3

Aguilar filed two EEOC complaints alleging sex discrimination. In the first, Aguilar asserted two claims: (1) on April 13, 2015, Pat Adauto and Betsy Keller removed protection from a hostile work environment and required her to work with a manager with a history of sexually harassing her; and (2) on April 16, 2015, Pat Adauto retaliated. Aguilar also asserted two claims in her second EEOC complaint: (1) "[f]ailure to pay equal wage for equal work" as of October 1, 2012; and (2) retaliation by Pat Adauto on April 16, 2015. On March 8, 2016, the EEOC dismissed Aguilar's complaint without specifying a reason and notified her of her right to file her own suit.

Aguilar later filed suit against the County under the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LABOR CODE ANN. §§ 21.001-.556. The County filed a plea to the jurisdiction in which it asserted that its governmental immunity had not been waived because Aguilar had failed to make out a *prima facie* case of discrimination. After the trial court denied the plea to the jurisdiction, the County filed this interlocutory appeal.

## II. DISCUSSION

The County raises two issues on appeal. First, it asserts that the trial court abused its discretion by failing to strike challenged portions of Aguilar's affidavit which was included with her response to the plea to the jurisdiction. Second, it asserts that the trial court erred by denying its plea to the jurisdiction on the merits. Aguilar asserts several arguments in response.

First, Aguilar contends that a basis for the trial court's denial of the plea included her argument that the plea required a detailed inquiry into the substance of her suit and the trial court possessed discretion to deny the jurisdictional ruling until after the presentation of evidence at trial. Because the County does not challenge this procedural ground—that is, whether the trial court

4

exercised discretion and deferred its jurisdictional ruling in denying the plea—Aguilar argues on appeal that the ruling should be affirmed on the basis that the County failed to challenge a basis for the trial court's ruling.   Even if the County's plea is considered on the merits, however, Aguilar further argues that the County's evidentiary complaints provide no basis for reversal and the evidence of record raises several fact issues for a jury to decide to include: whether Aguilar was paid less than similarly-situated male coworkers, whether she was a victim of severe, pervasive sex-based harassment, and whether she was forced to resign and constructively terminated for complaining about being harassed.   We address the arguments in turn.

### A.  Standard of Review

#### 1.  Evidentiary Rulings

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion, which occurs when the court rules without regard for any guiding rules or principles.  *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).   We must uphold an evidentiary ruling if there is any legitimate basis for it.  *Id.*   In addition, we will not reverse a trial court for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment.  *Id.* (citing TEX. R. APP. P. 44.1).

#### 2.  Plea to the Jurisdiction

A trial court's ruling on a plea to the jurisdiction is reviewed *de novo*.   *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).   When "evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor."  *Id.*

5

## B. Admission of Aguilar's Affidavit

A party asserting that a trial court's evidentiary ruling was an abuse of discretion must show: "(1) the trial court erred in admitting the evidence; (2) the erroneously admitted evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused rendition of an improper judgment in the case." *Hall v. Domino's Pizza, Inc.*, 410 S.W.3d 925, 929 (Tex. App.—El Paso 2013, pet. denied) (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)).

Aguilar supported her response to the County's plea to the jurisdiction with her own affidavit. The County moved to strike that affidavit on multiple grounds: (1) the "sham affidavit" rule; (2) improper legal conclusions; (3) the "best evidence" rule; (4) hearsay; and (5) lack of specificity. We address each ground in turn.

### 1. Sham Affidavit Rule

Pursuant to the sham affidavit rule, "a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 87 (Tex. 2018) (addressing the rule in the summary judgment context). The rule may be applied when "(1) the affidavit is executed after the deposition and (2) there is a clear contradiction on (3) a material point (4) without explanation[.]" *Id.* at 88. The supreme court has cautioned, however, that courts are not to apply these factors by rote but must instead make a case-specific inquiry. *Id.* In doing so, it is essential to examine the nature and extent of the contradiction. *Id.*

Additionally, the supreme court further instructed:

> Most differences between a witness's affidavit and deposition are more a matter of degree and details than direct contradiction. This reflects human inaccuracy more than fraud. If the differences fall into the category of variations on a theme, consistent in the major allegations but with some variances of detail, this is grounds for impeachment . . . . If, on the other hand, the subsequent affidavit clearly contradicts the witness's earlier testimony involving the suit's material points, without explanation, then the sham affidavit rule applies.

*Id.* (citation and internal quotation marks omitted).

"A fact is material if its existence might affect the outcome of the suit under the governing law[.]" *Fraire v. Budget Rent-A-Car of El Paso, Inc.*, 441 S.W.3d 523, 527 (Tex. App.—El Paso 2014, pet. denied) (quoting *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied).

The County argues that Aguilar's affidavit is a sham because it clearly contradicts her prior deposition testimony concerning the identity of her direct supervisor. Aguilar testified in deposition that the head of the public works department in 2011 was Ernesto Carrizal, and that she reported to him. She also testified that she had conversations with Norma Palacios, who was the assistant public works director, "in lieu of" Carrizal. She referred to Palacios as her supervisor, but she stated that Palacios was not her direct supervisor. In her affidavit, however, Aguilar repeatedly refers to Palacios as her direct or immediate supervisor. The County asserts that the contradiction is material because County policy states that reports of discrimination should be made to the employee's immediate supervisor. On review, we note that the evidence cited, however, is not the County's discrimination policy. Rather, the County cites to a slide from a Power Point presentation *about* the County's policy. In addition, the policy referenced in the presentation is one that was revised in 2012, after at least some of Aguilar's complaints were lodged.

7

The County has not demonstrated that its policy requires that complaints of discrimination be made to an employee's immediate supervisor. It therefore has not demonstrated that any discrepancy in the evidence concerning the identity of Aguilar's immediate supervisor is material. *See Fraire*, 441 S.W.3d at 527; *Moore*, 981 S.W.2d at 269. As a result, Aguilar's inconsistent testimony on this point does not warrant application of the sham affidavit rule. *See Lujan*, 555 S.W.3d at 88 (contradiction must be on a material point); *Fraire*, 441 S.W.3d at 527 (material fact is one that might affect case outcome under governing law). It is merely grounds for impeachment. *See Lujan*, 555 S.W.3d at 88.

In addition, we note that the County does not assert in its plea to the jurisdiction that Aguilar made her discrimination complaints to the wrong supervisor. Instead, it asserts that Aguilar did not make any discrimination complaints at all until after she left her employment with the County. Under the County's own framing of the issue, the identity of Aguilar's immediate supervisor is not material. *See Fraire*, 441 S.W.3d at 527; *Moore*, 981 S.W.2d at 269. This further supports our conclusion that the sham affidavit rule does not apply.

The County next argues that Aguilar's affidavit is a sham because it clearly contradicts her prior deposition testimony concerning the timing of her complaints about Manny Lucero. Aguilar testified in deposition that she complained about harassment by Lucero in 2000-2001, August 2011, and November 2014. The County complains that she omitted the dates of her complaints in her subsequent affidavit. It does not assert that Aguilar's affidavit states different dates than those to which she testified in deposition.

An affidavit that does not state the dates on which complaints were made does not clearly contradict a prior deposition that does state such dates. At most, the difference between the

affidavit and the deposition on the matter of dates is "more a matter of degree and details than direct contradiction." *Lujan*, 555 S.W.3d at 88.   Again, the sham affidavit rule does not apply. The trial court did not abuse its discretion by overruling the County's objections to Aguilar's affidavit based on the sham affidavit rule.

### 2. Legal Conclusions

The County's second challenge to Aguilar's affidavit is that it contains impermissible legal conclusions by a lay witness.   *See Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (legal conclusion in affidavit does not raise an issue of fact); *Aldridge v. De Los Santos*, 878 S.W.2d 288, 296 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.) (affidavit must be factual to raise fact issue).   The County contends that the affidavit is "saturated" with such conclusions, but it only addresses three instances in its brief.   In a similar situation, the San Antonio Court of Appeals held that an evidentiary complaint was not preserved for review because the appellant, in its brief, generally challenged the trial court's ruling on objections to an affidavit but failed to relate those objections to specific statements made in the affidavit.   *CHW-Lattas Creek, L.P. v. City of Alice*, 565 S.W.3d 779, 792 (Tex. App.—San Antonio 2018, pet. denied); *see* TEX. R. APP. P. 38.1(i) (requiring brief to present argument for contentions made).   We agree with this analysis and will therefore limit our consideration to those statements specifically addressed in the County's brief.

The alleged legal conclusions about which the County complains are statements by Aguilar that she and other division managers were "similarly situated"; she was subjected to "severe and pervasive" sexual harassment during her employment; and after she complained about discrimination, public works director Pat Adauto "retaliated" against her.   Aguilar points out that

9

the challenged statements all concern matters of fact, not questions of law. *See Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 89 (5th Cir. 2019) (per curiam) ("whether two employees are 'similarly situated' generally presents a question of fact for the jury"); *Beardsley v. Webb*, 30 F.3d 524, 530 (4th Cir. 1994) (whether "harassment was sufficiently severe or pervasive is quintessentially a question of fact"); *La Grange v. Nueces Cty.*, 989 S.W.2d 96, 99 (Tex. App.—Corpus Christi 1999, pet. denied) (recognizing retaliation is question of fact); *Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 543 (Tex. App.—Eastland 1997, no writ) (retaliation is question of fact, not law). Aguilar's affidavit does not purport to state legal opinions or conclusions. The challenged statements are factual and within the proper scope of Aguilar's testimony as a lay witness because they reflect her personal knowledge of the circumstances. *See* TEX. R. EVID. 602 (lay witness may testify to matters within personal knowledge).

In addition, the challenged statements are not conclusory. "A conclusory statement is one that does not provide the underlying facts to support the conclusion[.]" *Hogg v. Lynch, Chappell & Alsup, P.C.*, 553 S.W.3d 55, 75 (Tex. App.—El Paso 2018, no pet.) (quoting *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 512 (Tex. App.—El Paso 2010, no pet.)). The County presents each of Aguilar's statements in isolation, but we must consider them in the context in which they were made. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) (court cannot disregard evidence showing context). Viewing the challenged statements in the context of the affidavit as a whole reveals a factual underpinning for each statement.

Concerning whether she and other managers were similarly situated, Aguilar's affidavit includes a detailed explanation of why she believes that her job duties were nearly identical to

10

those other managers, including a specific comparison of those job duties. Concerning the severity and pervasiveness of the alleged sexual harassment, the affidavit explains at length, and with specific examples, how and to what extent she was harassed by Lucero. Finally, concerning retaliation, the affidavit specifically recites that, after Aguilar's complaint about discrimination, Adauto's "behavior changed so that she was acting with animosity and a negative attitude towards [Aguilar], and she began to challenge [Aguilar's] work" and she ultimately made what Aguilar perceived as a threat to discipline her.

The contested statements are not conclusory because the affidavit provides underlying facts in support of each statement. *See Hogg*, 553 S.W.3d at 75; *Rockwall Commons*, 331 S.W.3d at 512. The trial court did not abuse its discretion by denying the County's objections that Aguilar's affidavit contains impermissible legal conclusions.

### 3. Best Evidence Rule

The County's third basis for objecting to Aguilar's affidavit is that it violates the best evidence rule. The County again addresses only three examples in its brief, and we will again limit our review to those examples. *See CHW-Lattas Creek*, 565 S.W.3d at 792; TEX. R. APP. P. 38.1(i).

The best evidence rule provides that "[a]n original writing . . . is required in order to prove its content unless these rules or other law provides otherwise." TEX. R. EVID. 1002. On its face, "[t]he rule does not apply unless a party is seeking to prove the contents of a document." *DeSoto Wildwood Dev., Inc. v. City of Lewisville*, 184 S.W.3d 814, 828 (Tex. App.—Fort Worth 2006, no pet.); *accord Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 853 (Tex. App.—Dallas 2003, no pet.).

11

The County contends that Aguilar's affidavit violates the best evidence rule because it refers to County policy without attaching a copy of that policy. Aguilar states, "Under the County's policy, it was proper for me to direct discrimination complaints to my immediate supervisor." First, it is not apparent that she is referring to a written policy. If she is not, the best evidence rule has no application. *DeSoto*, 184 S.W.3d at 828 (rule does not apply unless party seeks to prove contents of a document); *Double Diamond*, 109 S.W.3d at 853 (same). In addition, it is the County's own position that, under County policy, it was proper for Aguilar to direct her discrimination complaints to her immediate supervisor. The best evidence rule does not apply in the absence of a dispute concerning the subject document's content. *See Double Diamond*, 109 S.W.3d at 853.

Aguilar also makes a second reference to County policy in the paragraph about which the County complains. That reference, however, merely directs the reader back to earlier portions of the affidavit: "As discussed above, under the County's policies, my 20 years of work experience substituted for a formal degree." In earlier portions of the affidavit, Aguilar states that a County human resources officer told that her work experience made up for her lack of a degree, and that "the County's policy was to write position descriptions broadly enough to permit experience to substitute for formal education." Again, it is not apparent that the policy to write position descriptions broadly is, itself, a written policy to which the best evidence rule would apply. *See Double Diamond*, 109 S.W.3d at 853.

The County next contends that Aguilar's reference to a County Commissioner's meeting without attaching a recording or transcript of the meeting violates the best evidence rule. But the best evidence rule specifically applies to proving the content of a writing, recording, or photograph.

12

TEX. R. EVID. 1002. Aguilar's reference is to what she heard and saw at a live meeting at which she was present, not the content of any recording or transcription of that meeting. The best evidence rule, by its very terms, does not apply. *See id.*

Finally, the County asserts that Aguilar's affidavit violates the best evidence rule because it refers to an email without attaching a copy of that email. Aguilar's specific statement is that she "received an email from Adauto wrongfully accusing [her] of inappropriate behavior during a meeting[.]" This statement is a description of Aguilar's perception—that she was being "wrongly accused" of having engaged in "inappropriate behavior"—rather than an attempt to prove the actual content of the email. For this reason, it does not fall within the terms of the best evidence rule. *See* TEX. R. EVID. 1002 (original is required to prove content of a writing).

The trial court did not abuse its discretion by overruling the County's objections based on the best evidence rule.

### 4. Hearsay

The County next contests Aguilar's affidavit on the ground that it contains inadmissible hearsay. As before, we will limit our review to the examples the County addresses in its brief. *See CHW-Lattas Creek*, 565 S.W.3d at 792; TEX. R. APP. P. 38.1(i).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801; *McMullan v. Friend*, 642 S.W.2d 15, 20 (Tex. App.—El Paso 1982, no writ). The County identifies ten paragraphs of Aguilar's affidavit and then, without analysis, concludes that those paragraphs contain hearsay. For example, the County states, "Paragraphs 7 and 32 contain inadmissible hearsay statements from Betsy Keller[,]" with no further information or explanation.

An appellant's argument should "explain why the law stated in the cited authorities is applicable to the facts of the case and why it supports the party's position." *Hernandez v. Hernandez*, 318 S.W.3d 464, 466 (Tex. App.—El Paso 2010, no pet.). The County's briefing on hearsay does not satisfy this requirement and is insufficient to present anything for our review. *See* TEX. R. APP. P. 38.1(i) (brief must contain clear argument for contentions made); *Foster v. City of El Paso*, 396 S.W.3d 244, 258 (Tex. App.—El Paso 2013, no pet.) (failure to provide substantive analysis of issue waives complaint); *Martinez v. El Paso Cty.*, 218 S.W.3d 841, 844 (Tex. App.—El Paso 2007, pet. struck) (same).

In addition, the County misconstrues the prohibition against hearsay. It states, "Any out-of-court statement, written or oral, that Aguilar offered to support her discrimination claims is inadmissible hearsay." This statement omits the crucial requirement that the out-of-court statement be offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801. An examination of the paragraphs identified by the County reveals that many of the out-of-court statements are referenced only to prove that they were made, not to prove the truth of their content. Indeed, one of the statements Aguilar recites is that Lucero told her that "a woman cannot do the job of a facilities manager." It is ludicrous to imagine that Aguilar, the female plaintiff in a sex discrimination lawsuit, offers that statement for its truth.

Other statements, such as those by the County's human resources personnel and by Aguilar's supervisors, were made by agents or employees of the County on matters within the scope of that relationship and while the relationship existed. By rule, they do not fall within the definition of hearsay. *See* TEX. R. EVID. 801(e)(2)(D) (defining when opposing party's statement is not hearsay).

14

The trial court did not abuse its discretion by overruling the County's hearsay objections.

### 5. Lack of Specificity

The County's final evidentiary objection is that certain statements in Aguilar's affidavit are inadmissible because they are lacking in specificity, which renders them conclusory. We again limit our review to the examples the County addresses in its brief. *See CHW-Lattas Creek*, 565 S.W.3d at 792; TEX. R. APP. P. 38.1(i).

As previously noted, a statement is conclusory if it does not provide the underlying facts that support it. *Hogg*, 553 S.W.3d at 75; *Rockwall Commons*, 331 S.W.3d at 512. The County relies on *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312 (Tex. 1994), for the proposition that a party's subjective beliefs are no more than conclusions and are not competent evidence. *Id.* at 314. The plaintiff in that case averred simply that he, in good faith, believed his employment was terminated because he filed a Worker's Compensation complaint, that he was a good employee, and that no other legitimate reason for termination existed. *Id.* The affidavit in *Carrozza*, which includes no supporting facts and is clearly conclusory, bears no resemblance to the affidavit filed by Aguilar.

The first statement the County contends is conclusory is Aguilar's assertion that she had much more expertise, duties, and responsibilities than two male managers, yet she was paid significantly less than they were. But the County views this statement in isolation. Viewing it in the context of the affidavit as a whole, shows that Aguilar explains her experience and expertise, and describes the similarities between her duties and responsibilities and those of the two male managers. In short, her statement is supported by specific underlying facts and is, therefore, not conclusory. *See Hogg*, 553 S.W.3d at 75; *Rockwall Commons*, 331 S.W.3d at 512.

15

The County next challenges Aguilar's statement concerning her conversations with County managers and human resource officers about pay disparity. The County contends that the statement is vague and conclusory because it fails to include who she spoke to and where and when the conversations occurred. Aguilar's statement is not conclusory because it is a factual recitation of events, not a conclusion. As for the complaint that it lacks specificity, the County again fails to consider the statement in context. *See Alamo Heights*, 544 S.W.3d at 771. In the following paragraphs, Aguilar details conversations she had with her supervisor, Norma Palacios, and a human resources representative, Elsie West. She also describes voicing a pay disparity complaint at a County Commissioner's meeting in September 2014. The affidavit as a whole provides sufficient detail to overcome the County's objection for lack of specificity.

The County's final challenge is to Aguilar's statement that she complained about the pay for her position having dropped $38,000 as soon as a woman took the job. The County contends that the statement is conclusory because it does not state to whom, how, or when she made this complaint. The County again ignores other paragraphs of the affidavit that supply additional information on the subject. Indeed, in the two paragraphs immediately following the paragraph about which the County complains, Aguilar identifies conversations with Palacios and West in which she complained about the $38,000 pay disparity. While Aguilar does not state the date of those conversations, the lack of that detail does not render the statement impermissibly vague. In addition, any lack of detail does not render the statement conclusory because it does not state a conclusion at all; it is a factual recitation of events.

The trial court did not abuse its discretion by overruling the County's objections that certain portions of the Aguilar affidavit are impermissibly vague or conclusory.

16

### 6. Harm Analysis

Error is not reversible on appeal unless it "probably caused the rendition of an improper judgment[.]" TEX. R. APP. P. 44.1. The burden to show harm from evidentiary rulings rests on the complaining party. *Hall*, 410 S.W.3d at 929-30 (citing *In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003)). As a consequence, an appellant who focuses exclusively on showing error and neglects to show the required harm fails to establish that the trial court abused its discretion in admitting the challenged evidence. *Id.* at 930.

Aguilar asserts that the County's evidentiary objections fail not only on the merits, but also because the County did not address the element of harm in its opening brief. *See id.* In reply, the County contends that Aguilar's affidavit was the only evidence she offered to establish a *prima facie* case of discrimination. Accordingly, it argues, harm is established by the mere admission of the affidavit because, otherwise, Aguilar is without any evidence at all and the trial court would have granted the County's plea. The County's argument concerning harm thus rests on its assertion that Aguilar's affidavit should have been excluded in its entirety.

We have examined the evidentiary objections briefed by the County and determined that the trial court did not abuse its discretion by admitting the challenged portions of Aguilar's affidavit. In addition, we cannot say that the trial court abused its discretion by admitting other portions of the affidavit because they were not specifically challenged on appeal. As a result, there is no showing that the affidavit as a whole should have been excluded and, therefore, no showing of harm under the County's theory of harm. *See id.*

In addition, the record as a whole demonstrates that many of the evidentiary issues the County raises concerning Aguilar's affidavit are rendered harmless by the County's own evidence.

17

For example, the County complains that Aguilar did not attach a copy of Adauto's April 16, 2015 email, but the County appended a copy of that memo as an exhibit to its plea to the jurisdiction. The County also provided as exhibits the specific job descriptions and resumes for Aguilar's alleged comparators, Arenas and Montes, negating any harm from Aguilar's allegedly conclusory description of those job positions.

The County has not sustained its burden to establish harm resulting from any error in the trial court's rulings on its objections to Aguilar's affidavit. *See Hall*, 410 S.W.3d at 929-30; TEX. R. APP. P. 44.1.

In sum, we conclude that the County has not demonstrated that the trial court's evidentiary rulings constituted an abuse of discretion or that any alleged error in those rulings was harmful.

The County's first issue is overruled.

### C. Deferral of the Jurisdictional Ruling

### 1. Standard for Deferring Ruling on Subject Matter Jurisdiction

In the court below, Aguilar responded to the County's plea to the jurisdiction arguing that the plea should be denied because the predicate facts were so inextricably linked to the merits of the controversy that the court should defer resolution of the jurisdictional issue until trial. *See Miranda*, 133 S.W.3d at 226; *see also Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("Whether a determination of subject-matter jurisdiction can be made in a preliminary hearing or should await a fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion."). On appeal, Aguilar contends that we may affirm the trial court's denial of the plea to the jurisdiction solely on this ground.

18

This Court recently addressed this same issue in *Texas Tech University Health Sciences— El Paso v. Flores*, 587 S.W.3d 831 (Tex. App.—El Paso 2019, pet. filed). The appellee in that case urged this Court to "affirm the trial court's decision based solely on the fact that the district court has the discretion to defer a ruling on jurisdictional issues where jurisdictional facts and the merits of the underlying case are so complex and intertwined that a decision on jurisdiction necessarily requires a detailed review of merits issues." *Id.* at 838 n.2. In *Flores*, however, we noted that the discretion-to-defer issue is "based on the ultimate question of whether there are apparent genuine issues of intertwined material fact (which would justify a 'delay' in the form of a denial of the plea to the jurisdiction to allow for ultimate jury/fact finder resolution) or potential genuine issues of intertwined material fact that have not yet been fully developed (which would justify a 'delay' in the form of an abatement for targeted discovery)." *Id.*

Ultimately, in *Flores*, we declined the invitation to resolve the appeal based on the trial court's discretion to defer its ruling reasoning that there was "no allegation that the trial court based its decision on the need for more discovery and the trial court's exercise of 'discretion' to defer resolution of the intertwined jurisdictional/merits issues for trial ultimately hinges solely on whether there are fact issues ripe for fact finder resolution[.]" *Id.* We conclude that the same result obtains in this case, for the same reason. There is no indication here that the parties required (or requested) further time for discovery. Indeed, it appears that both parties were ready for trial. Like in *Flores*, it appears from the record as though the trial court's denial of the plea to the jurisdiction was not based on a requested delay to engage in discovery or other development of the evidence.

### 2. Preservation of Deferral Issue

Nonetheless, on appeal, Aguilar asserts that the County waived any error in the trial court's denial of its plea to the jurisdiction because it did not challenge all independent grounds that support that ruling. *See Oliphant Fin. L.L.C. v. Hill*, 310 S.W.3d 76, 77–78 (Tex. App.—El Paso 2010, pet. denied); *accord Fox v. Maguire*, 224 S.W.3d 304, 307 (Tex. App.—El Paso 2005, pet. denied). Specifically, Aguilar argues that the County's opening brief did not raise an issue asserting that the court abused its discretion by denying the plea in order to defer its jurisdictional ruling until the time of trial. *See Miranda*, 133 S.W.3d at 226; *Bland*, 34 S.W.3d at 554.

This Court has a duty to liberally construe an appellant's statement of issues to include all subsidiary issues fairly raised therein. *See* TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."). Given the standard discussed above for deferring a jurisdictional ruling, we read the County's issue that the trial court erred in denying its plea to the jurisdiction as necessarily including as a subsidiary issue that there are no genuine issues of intertwined fact warranting deferral of the jurisdictional decision. *Flores*, 587 S.W.3d at 838 n.2. Thus, we conclude that the County has not waived this issue.

### D. The County's Plea to the Jurisdiction

### 1. Standard of Review

The TCHRA prohibits an employer from discriminating against a person on the basis of sex in connection with compensation or with the terms, conditions, or privileges of employment. TEX. LABOR CODE ANN. § 21.051. It also prohibits an employer from retaliating or discriminating against a person who has engaged in protected activity such as opposing a discriminatory practice

20

or making a charge of discrimination.  TEX. LABOR CODE ANN. § 21.055.  By definition, an "employer" includes a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed.  TEX. LABOR CODE ANN. § 21.002(8)(D).

Notably, in a suit against a governmental employer, the *prima facie* case implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635-36 (Tex. 2012).  Governmental units are immune from suit unless the state consents.  *Id*. at 636.  Although the Texas Legislature waived immunity by its enactment of the TCHRA, the waiver applies "only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder."  *Id*.  Thus, when a TCHRA suit is filed against a governmental employer, the employer may file a plea to the jurisdiction to challenge the pleadings of the suit, the existence of jurisdictional facts, or both.  *Alamo Heights*, 544 S.W.3d at 770.  "When a jurisdictional plea challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction.  If, however, the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim."  *Id.* at 770-71 (footnote omitted).

In cases where the jurisdictional facts are intertwined with the merits of the case, the supreme court has articulated a plea standard that is akin to the standard for summary judgment. *See Miranda*, 133 S.W.3d at 228 (citing TEX. R. CIV. P 166a(c)); *see also Alamo Heights*, 544 S.W.3d at 771.  "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact

21

finder.  However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 227-28.  Under this standard, once the governmental entity "asserts and supports with evidence that the trial court lacks subject matter jurisdiction," the plaintiff need only "show that there is a disputed material fact regarding the jurisdictional issue."  *Id.* at 228.

### 2.  Burden-Shifting Analysis

Texas courts analyze claims of discrimination utilizing the burden-shifting framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Mission*, 372 S.W.3d at 634  Under that framework, the plaintiff's initial burden is to establish a *prima facie* case of discrimination.  *Id*.  If she satisfies that burden, which has been described as "minimal" and "not onerous," a presumption of discrimination arises.  *Id.*  The burden then shifts to the employer to defeat the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for the challenged employment action.  *Alamo Heights*, 544 S.W.3d at 782.  If met, the presumption then disappears, and the burden returns to the employee to produce evidence that the employer's stated reason is false and a pretext for discrimination.  *Id.*

Here, the County asserts in its plea to the jurisdiction, and on appeal, that Aguilar failed to establish a *prima facie* case of either sex discrimination or retaliation.  We therefore need address only the *prima facie* stage of the burden-shifting analysis.

22

### 3. Aguilar's Claims of Discrimination

#### a. Disparate Treatment

##### (1). Similarly Situated Employees

Aguilar alleges that the County discriminated against her by paying her less than male coworkers. As an element of her *prima facie* case on this claim, she was required to establish that she was "treated less favorably than similarly situated members of the opposing class[.]" *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam); *see Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d 903, 911 (Tex. App.—El Paso 2015, no pet.). "Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 584 (Tex. 2017) (quoting *Ysleta*, 177 S.W.3d at 917). In other words, their situations and conduct must be "nearly identical." *Id.*; *see Tex. Dep't of Aging & Disability Servs. v. Loya*, 491 S.W.3d 920, 925 (Tex. App.—El Paso 2016, no pet.) ("employees are similarly situated if their circumstances are 'nearly identical'"). Employees with different responsibilities, supervisors, and capabilities are not "similarly situated[.]" *Rincones*, 520 S.W.3d at 584.

Aguilar contends that she was similarly situated to three male coworkers—Humberto Arenas, Victor Montes, and Juan Cruz—each of whom was paid more than she was for their work. We begin our analysis with Arenas and Montes.

##### (2). Arenas and Montes as Comparators

As this Court has noted, "[i]n disparate pay cases, if a plaintiff cannot show her job responsibilities are substantially the same as the comparators, she cannot establish a *prima facie* case by comparing her compensation to that of the comparators." *Esparza*, 471 S.W.3d at 911.

23

"Simply put, [e]mployees who hold different job positions are not similarly situated." *Id.* at 912 (internal quotation marks omitted; brackets in original).

The County presented evidence that Aguilar did not hold the same job position as Arenas or Montes, and that the three positions had different responsibilities, supervisors, and capabilities. *See Rincones*, 520 S.W.3d at 584; *Esparza*, 471 S.W.3d at 911. For example, the job description for the position held by Arenas states, in part: "The Road and Bridge Manager under the direction of the Public Works Director is responsible for planning, directing, managing and overseeing the technical and administrative day to day activities and operations of the Road and Bridge department." An essential duty of the position requires "Plan[ning], develop[ing] and organiz[ing] Road & Bridge projects and special project construction and design programs[.]" The education and experience requirements include a "Bachelor's Degree in Civil Engineering or related field and ten years of professional civil experience, including three years of supervisory or management experience, in the design and construction of bridges, structures, and roads with diverse operations or multiple locations. Or any equivalent combination of experience and training which provides the required knowledge, skills, and abilities." Required certificates and licenses include "[an] Automotive Service Excellence (ASE) certificates in automotive and heavy truck repair; Possession of a valid State of Texas Professional Engineer License, or equivalent transferable from another state."

The job description for the position held by Montes states, in part: "The Senior Telecommunications/Project Manager works under administrative direction, leads the development and implementation of a comprehensive Information Technology and Telecommunication Services strategy for El Paso County and schedules and oversees the daily

operations of the Information Technology projects assigned and the Telecommunication Services Division." The essential duties of the position include "[a]nalyz[ing] and defin[ing] telecommunications needs and requirements, prepar[ing] specifications and projects plans for acquiring telecommunications applications, hardware and/or software; [and] [a]dminister[ing] and design[ing] the County wide telecommunications network environment . . . ." The education and experience requirements include a "Bachelor's degree in Communications or related field, and five (5) years of experience in the area of small and large telephone systems to include hands on work in the installation and repair of computerized telephone equipment." The position also requires a "Nortel/Avaya Telecom training certification."

In contrast, the job description for Aguilar's position states, in part: "The Facilities Manager under the direction of the Public Works Director coordinates, organizes, plans, and directs all activities concerned with the upkeep and maintenance of the El Paso County facilities that may be assigned." Neither the essential duties nor the education or experience specifications require specialized technical skill or knowledge, and the only required license or certification is a Texas driver's license.

Aguilar worked in a different division and under a different supervisor than Arenas and Montes. None of the duties, responsibilities, or requirements recited above in relation to Arenas's or Montes's positions applied to Aguilar's position. Aguilar does not dispute these differences between her position and those held by Arenas and Montes. Instead, she points out general similarities between her position and theirs. For instance, all three were division managers. But they were division managers of different divisions under different departments. She urges that all three jobs required specialized knowledge or expertise. But that specialized knowledge or

expertise was in different fields. Aguilar argues that it is sufficient that all three positions had similar general management duties such as budget control, hiring and firing, and bid procurement. But the applicable test is not whether the positions are comparable in *some respects*; the test is whether the positions are "comparable in *all material respects*." *Ysleta*, 177 S.W.3d at 917 (emphasis added); *see AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008).

Aguilar contends that the respects in which her position differed from Arenas's and Montes's positions are not "material." But supreme court precedent establishes that differences in job standards, responsibilities, supervisors, and capabilities are "material." *See Rincones*, 520 S.W.3d at 584. And employees holding job positions that differ in those material respects are simply not similarly situated. *Id.*; *see Esparza*, 471 S.W.3d at 911-12.

While Aguilar's burden at the *prima facie* stage was not onerous, it did require, at a minimum, that she present evidence raising a fact issue on whether she was similarly situated to Arenas and Montes. *See Ysleta*, 177 S.W.3d at 917 ("similarly situated" requirement); *Miranda*, 133 S.W.3d at 228 (burden to raise disputed material fact). Aguilar does not contest the existence of the differences discussed above, differences that we hold are material. We thus conclude that Aguilar failed to demonstrate that a disputed material fact exists on the jurisdictional issue of whether she was similarly situated to Arenas and Montes. *See Miranda*, 133 S.W.3d at 228.

We note here that, as additional support for her claim of disparate pay in relation to Montes, Aguilar states that her supervisor, Palacios, at one point agreed that she was being discriminated against in this respect. Aguilar states in her affidavit that, when she complained to Palacios that Montes's pay had increased as a result of a reorganization while hers had decreased, Palacios responded, "They would have never done that to you if you were a man." When Aguilar asked,

"Isn't that sex discriminat[ion]?" Palacios reportedly answered, "Yes." But while this evidence indicates that Palacios believed Aguilar was being treated unfairly, we note that it does nothing to demonstrate that Aguilar and Montes were similarly situated employees. There is no evidence that Palacios was aware of the relevant standard for determining when employees are similarly situated or that she took any such standard into consideration when voicing her opinion. Palacios's personal belief that Aguilar was being discriminated against does not constitute any evidence to raise a fact issue on whether Aguilar and Montes were similarly situated for purposes of establishing a *prima facie* case of disparate treatment.

We conclude that Aguilar failed to establish a *prima facie* case of discrimination insofar as that claim is based on disparate treatment as between herself and Arenas or Montes. *See Esparza*, 471 S.W.3d at 911-12. Our analysis of Aguilar's disparate treatment claim does not end here, however, because there is evidence that she was similarly situated to another male coworker, Juan Cruz.

### (3). Cruz as a Comparator

Contrary to Arenas and Montes, the County readily acknowledges that Juan Cruz was similarly situated to Aguilar and that he was paid a higher salary. It contends, however, that these facts do not raise a fact issue on sex discrimination because Aguilar herself advocated for Cruz to receive a higher salary. We disagree.

Aguilar's burden at the *prima facie* stage was minimal and was satisfied by evidence (and the County's concession) that Cruz, a male, was similarly situated but received a higher salary than Aguilar. *See Ysleta*, 177 S.W.3d at 917; *Esparza*, 471 S.W.3d at 911. In its plea to the jurisdiction, the County contests only whether Aguilar established a *prima facie* case of

27

discrimination.  While Aguilar's recommendation that Cruz be paid a higher salary [1] may implicate whether the County had a legitimate, nondiscriminatory reason for the pay disparity, the County did not address that element in its plea, nor does it do so on appeal.  Further, even if it had raised the issue of a legitimate, nondiscriminatory reason, the County does not present any evidence, or even argue, that its *actual* reason for paying Cruz more was because of Aguilar's recommendation rather than discrimination based on sex.

We conclude that Aguilar demonstrated that a disputed material fact exists concerning whether the County engaged in disparate treatment based on sex by paying Aguilar less than Cruz, a similarly-situated male.  *See Miranda*, 133 S.W.3d at 228.  The trial court did not abuse its discretion by denying the County's plea to the jurisdiction on that claim.

### b.  Hostile Work Environment

This Court has defined a hostile work environment claim as including the following elements:

> (1) the employee belongs to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action.

*Soto v. El Paso Nat. Gas Co*., 942 S.W.2d 671, 678 (Tex. App.—El Paso 1997, writ denied).

### (1).  Harassment

To support a claim of hostile work environment, the alleged conduct must be both "objectively and subjectively hostile or abusive." *Esparza*, 471 S.W.3d at 913.  "That is, the

---

[1] Aguilar recommended that Cruz be paid more than the County was then offering for his position.  This was not necessarily a concession that Cruz should be paid more than she was because it did not address whether she was also deserving of higher pay.  Aguilar had separately advocated on her own behalf for a higher salary.

work environment must be both one that a reasonable person would find hostile or abusive and one that the victim in fact perceived to be so." *Id*. To assess this element, courts consider "the totality of the circumstances including frequency, severity, physical threats or humiliation, and whether the abusive conduct unreasonably interfered with the employee's work performance." *Id.*; *see Soto*, 942 S.W.2d at 677. Aguilar recounts in her affidavit what she characterizes as "relentless" harassment by a coworker, Manny Lucero. Specifically, she states that Lucero:

- sabotaged or interfered with her work by contacting her staff directly to give them instructions, even though Aguilar was their boss; and

- humiliated her by telling her staff that he was their boss and they had to follow his orders, which required her to "constantly" instruct her staff that she was still their boss and that they should follow her instructions, not Lucero's;

- "forgetting" to send her meeting invitations although he was instructed to do so;

- refusing to coordinate construction projects with her, which forced her to explain to other colleagues that Lucero would not cooperate with her;

- inserting himself into her business by telling contractors that he was in charge of facilities and that they should not listen to Aguilar because she did not know what she was doing;

- telling her staff and contractors that she was "in over [her] head" and that she did not run the department nearly as well as he had; and

- encouraging her staff and outside contractors to complain about her to her supervisor, human resources, or the County Commissioners.

The County argues that Lucero's comments did not create a hostile work environment because many of them were made to persons other than Aguilar. But those comments were made *about* Aguilar and were humiliating to her. In addition, because many of the comments were made to her staff and to contractors with whom she worked, they interfered with her ability to perform her job duties. *See Esparza*, 471 S.W.3d at 913; *Soto*, 942 S.W.2d at 677.

29

The County's second argument is that Aguilar does not demonstrate the frequency of Lucero's comments. But, while Aguilar does not provide specific dates, she does state that Lucero's conduct was "continuous and daily."

The County's next challenge to Aguilar's evidence of harassment is that "the offensiveness and hostility" of Lucero's conduct was "minimal" because Lucero was a coworker rather than a supervisor. This distinction lacks significance in the circumstances of this case. Regardless of his official position, Lucero effectively treated Aguilar as a subordinate by attempting to usurp her authority over her staff and contractors.

Aguilar's affidavit describes frequent, severe, and humiliating abusive conduct that unreasonably interfered with her work performance. *See Esparza*, 471 S.W.3d at 913. Aguilar demonstrated that a disputed material fact exists concerning whether her work environment was objectively hostile or abusive. *See id.*; *Miranda*, 133 S.W.3d at 228.

### (2). Harassment Based on Sex

The County next argues that Aguilar's evidence does not demonstrate that any harassment by Lucero was based on sex. It points out that there was no physical touching or groping, or even discussion of such conduct. But "[h]arassment based on gender need not take the form of a sexual advance or contain otherwise carnal overtones to constitute prohibited sex discrimination. Offensive behavior not involving sexual activity but nevertheless based on the gender of an employee, when sufficiently severe or pervasive, may create a hostile work environment." *Soto*, 942 S.W.2d at 679.

The County finds significance in the fact that Aguilar does not allege that Lucero harassed other women. But the question is whether there is evidence that Lucero harassed *Aguilar* because

30

she was a woman.   And the answer to that question, based on statements made by Lucero himself, is "Yes." Aguilar states in her affidavit that Lucero:

- referred to Aguilar in conversations with her staff or County personnel as "your female boss" or "the female facilities manager";

- told a third party that he wondered who she slept with to get the job;

- told others that a woman could not handle the job; and

- told Aguilar directly that he could not believe the Commissioners Court put a woman in charge of the department "because a woman can't do this job";

- "women belong in the kitchen; barefoot and pregnant";

- "women should never be supervisors of man"; and

- "women's job is that of teacher, nurse, secretary."

Despite the fact that Lucero's own words demonstrate that the reason for his hostile treatment of Aguilar was because she was a woman, the County argues that Lucero's conduct was not based on Aguilar's sex because Lucero offended everyone.   While Lucero may, indeed, have treated everyone poorly, we cannot ignore Aguilar's affidavit testimony demonstrating that Lucero's treatment of *her* was, by his own admission, because she was a woman.   That evidence is sufficient at the *prima facie* stage to demonstrate a disputed material fact regarding whether Lucero's harassing behavior was based on Aguilar's sex.   *See Miranda*, 133 S.W.3d at 228.

### (3).   Effect on Employment and Failure to take Remedial Action

The remaining elements of a hostile work environment claim challenged by the County are whether the alleged harassment affected a term, condition, or privilege of Aguilar's employment, and whether the County failed to take adequate remedial action.   *See Soto*, 942 S.W.2d at 678. Aguilar complained to the County about Lucero's conduct toward her in 2000 or 2001, in 2011,

31

and again in 2014. As a result of these complaints, public works director Ernesto Carrizal prohibited Lucero from talking to Aguilar's staff or interfering with their projects. Carrizal retired in December 2014, and Pat Adauto became public works director. On April 9, 2015, Adauto informed Aguilar that she was going to lift the restrictions on Lucero, and asked Aguilar to "forget the past," "make amends with [Lucero]," and treat the matter as "water under the bridge." Aguilar agreed to do so as long as Lucero did not return to the behavior that led to the restrictions in the first place.

Immediately following Aguilar's meeting with Adauto, Lucero informed Aguilar's staff that he was "back in business," he would now be their boss and Aguilar's boss, and they "should listen to him now." Aguilar's staff complained to her about Lucero's comments, threats and harassment. Because of Lucero's immediate return to his previous behavior, Aguilar met with human resources director Keller and public works director Adauto on April 13, 2015. Aguilar informed them of Lucero's harassment and "practically begged them" not to require her to work with him. Adauto became upset and angry, and Keller argued with her about whether Lucero's hostility toward her was based on her sex. Aguilar states in her affidavit that "[b]oth of them ignored my complaints and ignored the discriminatory admissions by Lucero and his continuing and ongoing discrimination and harassment towards my departments and myself. They refused to do anything to correct the hostile work environment."

Aguilar further states that she knew Lucero's harassment would be unstoppable, and that she felt lost and betrayed by the County. She did not know what else to do feeling, in effect, that human resources had "closed [its] door" on her and she had nowhere else to turn. Her health and ability to perform her job were seriously affected, and she resigned her position on April 16, 2015.

The County urges that this evidence is insufficient to support Aguilar's hostile work environment claim because it shows only that restrictions on Lucero were lifted for one week, Lucero made one comment to Aguilar's staff, and Aguilar quit. This characterization of the evidence ignores Lucero's history of harassment, about which the County was well aware. On this point, the County is mistaken in asserting that Aguilar does not present evidence that Adauto was aware of the prior restrictions placed on Lucero. On the contrary, Aguilar states that Adauto asked Aguilar about her problems with Lucero, asked Aguilar to forget those problems, and lifted the restrictions on Lucero. There is ample evidence that Adauto was aware of the situation.

In any event, Aguilar's hostile work environment claim is not based solely on the final week of her employment, divorced from the years of harassing conduct that preceded that week. The fact that the County, through Carrizal, placed restrictions on Lucero's interactions with Aguilar and her staff is some evidence that the County recognized the seriousness of Lucero's conduct and its effect on Aguilar's ability to do her job. Lifting those restrictions, combined with Lucero's immediate return to the same type of behavior and Keller's and Adauto's refusal to give any credence to Aguilar's complaints despite Carrizal's prior recognition of the problem, is some evidence of a failure to take adequate remedial measures. A reasonable person could conclude that this failure effectively communicated to Aguilar that Lucero would be permitted to once again humiliate Aguilar and interfere with her job performance. In short, there is evidence raising disputed material facts regarding whether Lucero's harassment affected a term, condition, or privilege of Aguilar's employment and whether the County failed to take adequate remedial action. *See Miranda*, 133 S.W.3d at 228; *Soto*, 942 S.W.2d at 678.

33

In sum, Aguilar produced evidence raising material fact issues on each of the challenged elements of her *prima facie* case of hostile work environment discrimination. The trial court did not abuse its discretion by denying the County's plea to the jurisdiction on that claim.

### c. Retaliation

The TCHRA prohibits an employer from retaliating against an employee for engaging in protected activity such as opposing a discriminatory practice or making a charge of discrimination. TEX. LAB. CODE ANN. §§ 21.051, 21.055. To establish a *prima facie* case of retaliation, the employee must show that: "(1) she engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action." *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015); *see Alamo Heights*, 544 S.W.3d at 782.

### (1). Engaging in Protected Activity

Aguilar contends that she engaged in protected activity by opposing sex discrimination, specifically by reporting such discrimination to her supervisors and to the County's human resources department. This opposition encompasses both the claim of disparate treatment and the claim of hostile work environment. Opposing a discriminatory practice is a protected activity regardless of the merits of the underlying discrimination claim, as long as "the employee must demonstrate a good-faith, reasonable belief that the underlying discriminatory practice violated the TCHRA." *Nicholas*, 461 S.W.3d at 137.

### (2). Opposing a hostile work environment

There is evidence that, beginning in 2000 or 2001, Aguilar complained to her supervisors and human resources representatives on multiple occasions about sex-based harassment by Lucero.

34

On April 13, 2015, after Adauto removed restrictions that had been put in place to protect Aguilar from such harassment, Aguilar again complained to Adauto and Keller. This evidence (as detailed previously in this opinion) raises a fact issue concerning whether Aguilar engaged in protected activity by opposing a hostile work environment resulting from severe and pervasive sex-based harassment. *See Nicholas*, 461 S.W.3d at 137; *Alamo Heights*, 544 S.W.3d at 782.

### (3). Opposing Disparate Treatment

Aguilar states in her affidavit that she "had a series of conversations with the County's managers and human resources officers in which [she] complained that [she] was being paid less because [she] was a woman." She specifically identifies her supervisor, Norma Palacios, and a human resources representative, Elsie West, as persons to whom she made these complaints. She also describes two of her complaints in some detail, one concerning the difference between her pay and that of her male predecessor, and the other concerning the difference between her pay and that of Victor Montes. In addition to these conversations, in September 2014, Aguilar voiced her opinion in a Commissioner's Court meeting that the position of facility manager was significantly underpaid. She specifically complained that the salary of a similarly-situated male had gone up, while hers had gone down.

The evidence of Aguilar's repeated complaints of sex-based pay disparity raises a fact issue concerning whether Aguilar engaged in protected activity by opposing disparate treatment. *See Nicholas*, 461 S.W.3d at 137; *see Alamo Heights*, 544 S.W.3d at 782. In this regard, we note that the merits of Aguilar's claim of pay disparity in comparison with Montes are of no consequence. *See Nicholas*, 461 S.W.3d at 137. It is sufficient that the record supports an inference that Aguilar had a good faith, reasonable belief that the practice about which she complained violated the

TCHRA.  *See id.*

### (4).  Adverse Employment Action

In September 2014, shortly after voicing a complaint about pay disparity during a Commissioner's Court meeting, Aguilar received a reprimand from Carrizal for raising her discrimination complaint in public.  This reprimand, however, is not the adverse employment action on which Aguilar bases her claims of retaliation.[2]   Rather, in both of the EEOC complaints that form the foundation of Aguilar's lawsuit, she specifies that the alleged retaliation (*i.e.*, adverse employment action) was committed by Pat Adauto on April 16, 2015.

Aguilar states in her affidavit that, on April 16, 2015, three days after Aguilar met with Adauto and Keller about Lucero's harassing behavior, Adauto sent Aguilar an email "wrongfully accusing [her] of inappropriate behavior during a meeting when Lucero was present."   Adauto stated she wanted to discuss "next step action," which Aguilar took to mean "disciplinary action."  Aguilar's affidavit further relates that the thought of being disciplined for engaging in protected activity led Aguilar to experience an anxiety attack at work, which caused her to shake, cry, and hyperventilate to the point that her husband had to come and pick her up.  She resigned her position that same day and contends that she was constructively discharged by the County.  A constructive discharge constitutes an adverse employment action under the TCHRA.  *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2007); *El Paso Cmty. Coll. v. Lawler*, 349 S.W.3d 81, 88 (Tex. App.—El Paso 2010, pet. denied).

---

[2]  Aguilar testified in deposition, in relation to this reprimand, that she did not believe Carrizal discriminated against her.

Constructive discharge has been defined as "an employee's reasonable decision to resign because of unendurable working conditions." *Baylor*, 221 S.W.3d at 605 (quoting *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)). In other words, an employee is constructively discharged when "the employer made the working conditions so intolerable that a reasonable person would feel compelled to resign." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010); *see Dillard Dep't Stores, Inc. v. Gonzales*, 72 S.W.3d 398, 409 (Tex. App.—El Paso 2002, pet. denied). The employee is not required to show that the employer "subjectively intended to force the resignation." *Dillard*, 72 S.W.3d at 409. It is the conditions, not the employer's state of mind, that controls. *Id.*

The totality of the circumstances surrounding Aguilar's hostile work environment claim—including evidence of Lucero's history of harassing Aguilar, Adauto's lifting of restrictions put in place to protect Aguilar from that harassment, Adauto's and Keller's subsequent refusal to take remedial action when the harassment began again, and Adauto's and Keller's refusal to acknowledge Aguilar's renewed complaints about that harassment—indicate working conditions so intolerable that a reasonable person would feel compelled to resign. *See Waffle House*, 313 S.W.3d at 805; *Dillard*, 72 S.W.3d at 409. In addition, there is evidence that the "last straw" ultimately triggering Aguilar's resignation was Adauto's April 16, 2015 email implying the possibility of disciplinary action against Aguilar stemming from an occurrence involving Lucero, her alleged harasser.

We conclude that the evidence raises a material fact issue on whether Aguilar suffered an adverse employment action by being constructively discharged. *See Nicholas*, 461 S.W.3d at 137; *Alamo Heights*, 544 S.W.3d at 782.

### (5). Causation

The County's final challenge to Aguilar's retaliation claims is that there is no evidence of causation. At the *prima facie* stage, the causation standard may be satisfied "merely by proving close timing between the protected activity and the adverse action." *Alamo Heights*, 544 S.W.3d at 782 (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)). But to be relevant, the temporal proximity must be "very close." *Id.* at 790 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). We again focus on the adverse employment action of constructive discharge.

### i. Opposing a Hostile Work Environment

Aguilar complained about a hostile work environment resulting from harassment by Lucero over the course of several years. There is evidence that Keller, the human resources director, and Adauto, the director of public works, were both aware of those complaints and the fact that restrictions had been put in place to address them. On April 13, 2015, after those restrictions had been lifted by Adauto and Lucero had resumed his harassing behavior, Aguilar again complained to Adauto and to Keller. Adauto and Keller dismissed Aguilar's complaints and refused to take any corrective action. Moreover, Adauto expressed anger with Aguilar for bringing her complaints about Lucero to human resources. Aguilar states that Adauto's behavior toward her changed immediately after that meeting. Adauto displayed animosity and a negative attitude toward her and began to challenge her work. Three days after the April 13, 2015 meeting, Adauto emailed Aguilar, accusing her of engaging in "inappropriate behavior during a meeting when Lucero was present" and stating that she wanted to meet with Aguilar to discuss "next step action." This perceived threat of disciplinary action resulted in Aguilar experiencing an anxiety attack and

38

resigning her position with the County that same day.

The time that elapsed between Aguilar's final complaint about a hostile work environment resulting from harassment by Lucero and her alleged constructive discharge is a mere three days. This temporal proximity is sufficient to satisfy her causation burden at the *prima facie* stage. *See Alamo Heights*, 544 S.W.3d at 782.

### ii. Opposing Disparate Treatment

The same cannot be said, however, concerning the temporal proximity between Aguilar's complaints of disparate treatment and her alleged constructive discharge. The evidence reflects that the bulk of Aguilar's complaints about disparate pay were made in, or prior to, the summer of 2014. It was during the summer of 2014—almost a year before her alleged constructive discharge—that she was allegedly warned to "[b]e careful with complaints."

Aguilar's last instance of opposing disparate pay occurred in September 2014, and she was promptly reprimanded for voicing her discrimination complaint in public. There is no evidence that Aguilar engaged in further opposition to disparate treatment between September 2014 and her alleged constructive discharge on April 16, 2015, seven months later.

The parties cite cases variously holding that lapses in time of a few months are too long to demonstrate temporal proximity and that lapses of up to a year are not too long. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (emphasizing that temporal proximity must be "very close" and noting cases holding that 3 and 4 month gaps are too long); *Upton Cty., Tex. v. Brown*, 960 S.W.2d 808, 827 (Tex. App.—El Paso 1997, no pet.) (noting cases holding gaps of 7 months and 1 year are not too long). As these cases would suggest, and as this Court has recognized, "there is no hard-and-fast rule that any specified amount of time is too removed for an

39

inference of causation." *Tex. Dep't of Criminal Justice v. Flores*, 555 S.W.3d 656, 669 (Tex. App.—El Paso 2018, no pet.). But the cases in which an inference is recognized despite a substantial delay generally involve instances where the defendant retaliated at the first opportunity that was presented. *See id.*; *Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 159 (Tex. App.—El Paso 2016, no pet.).

Given that Aguilar was actually disciplined within days of voicing her last complaint about pay disparity in September 2014, that circumstance would have been the first opportunity to assert she experienced retaliation for her opposition to disparate treatment. Yet she does not contend that the reprimand she received was retaliatory, and her alleged constructive discharge did not occur for another seven months. On this record, the "first opportunity to retaliate" principle does not apply to permit an inference that Aguilar's opposition to disparate treatment caused her constructive discharge. *See Flores*, 555 S.W.3d at 669; *Esparza*, 510 S.W.3d at 159. And, without that principle, the temporal proximity between the two events does not meet the "very close" requirement necessary to give rise to an inference of causation. *See Breeden*, 532 U.S. at 273; *Alamo Heights*, 544 S.W.3d at 782.

In addition to the lack of temporal proximity, we cannot overlook that Aguilar specifically alleged in her EEOC complaint that the retaliation about which she complained was committed by Pat Adauto on April 16, 2015, the date of Aguilar's alleged constructive discharge. But the evidence shows that Adauto did not assume the position of director of public works until December 2014, three months after the last of Aguilar's pay disparity complaints was lodged in September 2014. Nothing in the record indicates that Adauto was employed by the County prior to December 2014, or that she had any knowledge about Aguilar's disparate treatment complaints.

40

"If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999).

The evidence does not demonstrate a sufficiently close temporal proximity between Aguilar's opposition to disparate treatment and her alleged constructive discharge, nor does it demonstrate that Adauto, the decision-maker, was aware of Aguilar's opposition to disparate treatment. Aguilar has not demonstrated that a material disputed fact exists concerning a causal link between this protected activity and the asserted adverse employment action. *Miranda*, 133 S.W.3d at 228.

In sum, Aguilar has presented evidence (1) that she engaged in protected activity by opposing sex discrimination based on disparate treatment and a hostile work environment, (2) that she suffered an adverse employment action by being constructively discharged, and (3) a causal link exists between her opposition to a hostile work environment and her alleged constructive discharge. She has not, however, presented evidence to show a causal link between her opposition to disparate treatment and her alleged constructive discharge.

We conclude that the trial court did not abuse its discretion by denying the County's plea to the jurisdiction on Aguilar's claim of retaliation in regard to her opposition to a hostile work environment. It did, however, abuse its discretion by denying the plea in regard to Aguilar's claim of retaliation in regard to her opposition to disparate treatment.

The County's second issue is sustained in part and overruled in part.

41

### III. CONCLUSION

We reverse the trial court's order insofar as it denies the County's plea to the jurisdiction challenging Aguilar's claims for sex discrimination based on disparate treatment, to the extent that those claims are based on the assertion that Aguilar was similarly situated to Arenas and Montes. Accordingly, those claims are dismissed for lack of jurisdiction. We also reverse the trial court's order insofar as it denies the County's plea to the jurisdiction challenging Aguilar's claim for retaliation for engaging in opposition to disparate treatment and dismiss that claim for lack of jurisdiction. Having overruled the remaining arguments, we affirm the trial court's order as modified.

GINA M. PALAFOX, Justice

March 19, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

42